Darrel C. Menthe (SBN 186252)
E-mail: dmenthe@sagelawpartners.com
**SAGE LAW PARTNERS, P.C.**
9696 Culver Boulevard, Suite 301
Culver City, CA 90232
Tel: (310) 388-4870
Fax: (310) 388-4871

*Attorneys for Defendant Boyd Street Distro, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AK FUTURES LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>BOYD STREET DISTRO, LLC, a California limited liability company; and DOES 1-10,<br><br>          Defendants. | **CASE NO:** 8:21-cv-01027-JVS-ADS<br><br>**MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

# Table of Contents

I.   INTRODUCTION .................................................................................................... 4

II.  FACTUAL BACKGROUND................................................................................... 4

III.  ARGUMENT ........................................................................................................... 6

    A.    **Defendant Lacked Notice of the Injunction Papers** ......................................... 6

    B.    **No Federal Protection Should be Afforded to Plaintiff's Delta-8 Products Because of Federal Cannabis Laws** ................................................................ 6

    C.    **Plaintiff Has Otherwise Not Demonstrated Likelihood of Success on the Merits** .......... 8

        1.   No Knowledge or Intent to Sell in the Future ...................................... 9

        2.   There is No Trademark Claim Here ..................................................... 9

    D.    **Injunction Not Warranted Through Balance of Hardships**............................ 10

IV.  CONCLUSION...................................................................................................... 11

# Table of Authorities

**Cases**

*CreAgri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 6267, 628, 633-34 (9th Cir. 2007)..................................................................................................................7

*Omega S.A. v. Costco Wholesale Corp.*
   776 F.3d 692, 702 (9th Cir. 2015)...............................................................8

**Statutes**

2018 Farm Bill
   section 297A, codified at 7 U.S.C. § 1639o................................................5

Agriculture Improvement Act of 2018
   Public Law 115-334, 132 Stat. 4490 (December 20, 2018).........................5

**Rules**

85 F.R. 51639..................................................................................................4

COMES NOW BOYD STREET DISTRO, LLC, by and through its counsel of record, and responds as follows:

## I. INTRODUCTION

Defendant Boyd Street Distro, LLC ("Boyd Street") imposes the issuance of a preliminary injunction in this case for multiple reasons. The critical reasons are: (1) Cake's Delta-8 THC products are a Schedule I controlled substance and are being distributed in violation of Federal law under recent DEA guidance; (2) There is no harm nor was there knowledge of potential wrongdoing. Boyd Street purchased from an authorized dealer once, had no reason to believe any products lacked permission to use the Cake copyright, no longer has any Cake products in inventory, and has no plans to market any Cake products again; (3) the complaint is a trademark case couched as a matter of copyright, which is a different intellectual property right.

## II. FACTUAL BACKGROUND

The arrival of Cake products on the market at the end of 2020 follows a particular known path. The FDA has been seeking to regulate and control flavored vape products for some time, believing them to be marketed to or attractive to minors. However, there appeared to be a loophole in the regulation permitting refillable flavored vape and single-use disposable vapes (such as "Puff Bar"). Puff Bar came on the market in 2019. It formed a special-purpose entity to hold and obtain trademarks. Upon receiving them in early 2020, Puff Bar brought suit against multiple distributors.

But in April 2020, the FDA issued industry guidance on flavored (tobacco) vape products on the market without premarket authorization. The success of Juul vape pods were a catalyst for the intervention. The FDA issued warning letters over the summer of 2020 to specific companies for flavored e-cigarettes, including "Puff Bar." Ultimately most of these had to be withdrawn from the market.

A similar "loophole" argument has been going around surrounding the 2018 Agricultural Improvement Act (colloquially known as the 2018 Farm Bill) that legalized agricultural hemp production. A barrier to hemp production has been the fact that all hemp contains some cannabinoids which are not permitted under Federal law -- a Schedule I drug. The 2018 Farm Bill legalized hemp production if it had less than 0.3% Delta-9 THC, the primary psychoactive component.

In fact, there are other cannabinoids in marijuana, including a compound called Delta-8 THC, but in minute quantities. In October 2020, Cake came on the market. Cake uses flavored *cannabis* disposable vape pods, not tobacco. Cake uses "Delta-8" THC which must be extracted and manipulated chemically to be of industrial use, and contends that Delta-8 is not limited or prohibited. Cake has followed the same pattern obtaining trademarks, and immediately bringing multiple suits to protect its turf in the marijuana market. Cake's position is that it has identified a loophole that permits it to market a cannabis vape product with a similar psychoactive profile to illegal marijuana, and that the 2018 Farm Bill unwittingly permitted this.

However, the U.S. D.E.A. issued an "interim final rule" in August 2020 holding that as synthetically derived cannabinoids are not "hemp" and remain a Schedule I controlled substance. (85 F.R. 51639) **(Exhibit D).** Delta-8 is now specifically on the D.E.A.'s "Orange Book" of controlled substances **(Exhibit E).** There is no provision in the 2018 Farm Bill permitting sales of any quantity of Delta-8 THC.

As to this particular case, In May and June 2021, Defendant admits that it purchased a single box on consignment and then made a second larger purchase from a company that Defendant believes to be an authorized distributor. As Mr. Ali explains, the distributor company held itself out to be an authorized distributor and issued a written invoice, which counterfeiters would not do. The Cake products were sold out, none is in inventory, and Boyd Street has no plans to ever purchase or sell Cake products again.

## III. ARGUMENT

### A. Defendant Lacked Notice of the Injunction Papers

The motion for preliminary injunction was evidently filed the same day that Boyd Street filed its Answer. As can be seen on the Notice of Electronic Filing (NEF) **(Exhibit C)** for that filing, the preliminary injunction was not actually electronically served on counsel for Defendant Boyd Street Distro LLC. Defendant was not made aware of the filing, or that notice was not being sent, until Plaintiff's counsel contacted them about expedited discovery shortly after the Court granted the motion in August. (*See* Declaration of Darrel C. Menthe).

### B. No Federal Protection Should be Afforded to Plaintiff's Delta-8 Products Because of Federal Cannabis Laws

Should a Federal court issue an injunction to protect the purported rights of a seller of a product that is not lawful under Federal law?[1] As indicated, CAKE Delta-8 products may be "state legal," but the U.S. DEA considers Delta-8 THC to be a Schedule I controlled (banned) substance.

At the end of 2018, Congress passed an act known colloquially as the 2018 Farm Bill, legalizing hemp cultivation. Agriculture Improvement Act of 2018, Public Law 115-334, 132 Stat. 4490 (December 20, 2018) (hereinafter "2018 Farm Bill"). Because all hemp may contain some psychoactive components, most notably Delta-9 THC, the 2018 Farm Bill could not legalize hemp production without setting some standard to distinguish hemp from something that could be used as a recreational drug. Accordingly, the 2018 Farm Bill makes an exception to the DEA's Schedule I prohibition on Delta-9 THC. It permits the sale of products that contain less than 0.3% of Delta-9 THC. 2018 Farm Bill section 297A, codified at 7 U.S.C. § 1639o.

---

[1] This Court is not sitting in diversity jurisdiction, but under subject matter jurisdiction. Although that distinction may not be dispositive, it would seem to weigh against the exercise of any equity power – as a California court might be tempted to - that might conform to state permissions on marijuana/THC.

Delta-8 THC is technically naturally occurring cannabinoid with psychoactive properties, as is Delta-9 THC, but Delta-8 exists in extremely small quantities, too small to be simply extracted outright.  A chemical process is required to make it commercially viable, plus it is concentrated and flavored for vape purposes.[2]  Plaintiff asserts it has found a loophole under Federal law that permits the sale of a high-concentrated THC product with the psychoactive effects for which marijuana products is banned under Federal law.[3]  To grant this injunction is to validate that theory.  The State of Colorado, for example, has explained that converting hemp products into delta-8 THC is noncompliant with being an "industrial hemp product."  **(Exhibit F).**

The DEA has taken a dim view of how far that extends to products beyond those containing less than 0.3% concentration of Delta-9 THC (the common variety). Delta-8 is considered a synthetic cannabinoid by the DEA because, among other things, it is concentrated and flavored.  Plainly, the 2018 Farm Bill was not intended to legalize a form of marijuana/THC on the Federal level, but to permit hemp production so long as it was <u>not</u> being used to produce products that gave customers a THC high.  As the DEA explains:

> The AIA [2018 Hemp Act] does not impact the control status of synthetically derived tetrahydrocannabinols (for Controlled Substance Code Number 7370) because the statutory definition of ''hemp'' is limited to materials that are derived from the plant Cannabis sativa L. For synthetically derived tetrahydrocannabinols, the concentration of D9-THC is not a determining factor in whether the material is a controlled substance. All

---

[2] See https://www.michigan.gov/mra/0,9306,7-386-90056-563487--,00.html (describing Delta-8 production).

[3] See https://www.cancer.gov/publications/dictionaries/cancer-drug/def/delta-8-tetrahydrocannabinol for another description of Delta-8.

7
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

     synthetically derived tetrahydrocannabinols remain schedule
     I controlled substances.

(**Exhibit D**, p. 3, emphasis added.)

The Controlled Substances list of July 20, 2021, now lists Delta-8 as a controlled substance. (**Exhibit E**, p.18).

  As such, the CAKE Delta-8 products that are the subject of this suit are not lawfully for sale under Federal law.

  Mr. James McClelland's, Plaintiff's CEO, declaration is the sole authority for Plaintiff's aver that Delta-8 products are actually legal under the 2018 Farm Bill (AIA). Plaintiff believes, in other words, that it has found a loophole in the 2018 Farm Bill that accidentally permits the nationwide sale of psychoactive THC products. Notably, no law or regulation is actually cited in the moving papers beyond this declaration of the company's CEO.

  According to the information presented here, the DEA does not agree with Mr. McClelland's assertion that Delta-8 THC is lawful just because it has less than 0.3% Delta-9 THC. There is no minimum Delta-8 threshold in the 2018 Farm Bill or the DEA regulations.

  Although this is being couched a copyright case, it largely sounds in trademark. For trademark protection to apply, the use in commerce must be lawful use. *CreAgri, Inc. v. USANA Health Services, Inc*., 474 F.3d 6267, 628, 633-34 (9th Cir. 2007). While the Complaint is couched in terms of a copyright in the trademark – a stretch to be sure – and "unfair competition," the Complaint discusses the pending trademark protection at length as the rationale for seeking injunctive relief.

  It is a maxim that he who seeks equity must do equity, and the sales of these products that are DEA-controlled is not doing equity. Given the DEA's scheduling of Delta-8 THC and the lack of contrary evidence, Plaintiff has not met its burden for an injunction.

  **C.**  **Plaintiff Has Otherwise Not Demonstrated Likelihood of Success on**

the Merits

### 1. No Knowledge or Intent to Sell in the Future

Defendant lacked knowledge that any goods it had purchased from the company that held itself out to be a legitimate distributor were not approved for sale by Cake's owner as authentic Cake products. Plaintiff's CEO avers in paragraph 17 that AKF "distributes its CAKE Products via authorized retailers and distributors, including retailers and distributors in Los Angeles," but does not list who they are. Defendant knows of no online source for that information. As Defendant testifies here, Boyd Street asked for a written invoice as a way of confirming the company (Rehab Glass Co.) because counterfeiters, in his experience, do not issue invoices.

Further, as Defendant acknowledges, the Cake product its investigator purchased at Boyd Street Distro has a Certificate of Analysis and QR code that links to AKF lab testing and other important information. It looks authentic in every way.

Defendant also has no intent to sell any Cake products now or in the future and has none in inventory (See Declaration of Roshaan Ali).

### 2. There is No Trademark Claim Here

The Complaint circumnavigates the lack of actual trademark protection by seeking instead remedy for *copyright* infringement in the sale of these products. The allegations of unfair competition and false advertising are meant to be a facsimile of the trademark protection not yet obtained. A company does not have to be an "authorized reseller" to sell a copyright product provided it is obtained from a person with authorization. A company may not transform a copyright into a device protection, "contravening the general rule against granting copyright protection over useful articles." *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 702 (9th Cir. 2015) (company that lawfully bought product abroad could distribute in United States without permission of copyright holder). This means it is the *label* and not the *product* that is protectable under copyright law.

### D. Injunction Not Warranted Through Balance of Hardships

The argument that Plaintiff makes that may have the most consideration is that the injunction would appear to do no harm. That would appear to be more so because Defendant is not now buying or selling Plaintiff's products anyway. Put that way, of course, almost any claimant to intellectual property rights might be entitled to an injunction. If an injunction were to be issued, it should be probably issued *erga omnes*: nobody should be selling these products.

Plaintiff's claim about damaging AKF's goodwill and reputation is negated by the scheduling of Delta-8 by the DEA as a controlled substance. That goodwill and reputation does not have legally cognizable value if the products cannot be sold under Federal law. Similarly, the allegation of "lost revenue from sales" is without value. Mr. McClellan does note that its sales are nearly $60 million in about six months. That speaks to its unregulated nature as much as anything else.

Finally, AKF states that it "regularly tests its products for potency and regulatory compliance purposes…" (McClellan Dec., paragraph 23). The idea is the assertion that AKF's delta-8 vape is "safe" and counterfeits might not be. But it is not clear what that means given that the product itself is not compliant with DEA regulations. It likely means that AKF certifies that it contains less than 0.3% Delta-9 THC, which it asserts makes it legal. The point is, there are no "safe" Delta-8 tests or amounts under Federal regulations. <u>None of Plaintiff's products is FDA approved. This can be seen in the photograph taken of the supposedly identical purportedly counterfeit packaging</u>. Docket No. 15-7 p. 9 of 14 (photograph by Plaintiff's witness Drew Maconachy).[4]

---

[4] The comparison photograph at paragraph 28(c) of the Complaint cuts off the advising that it is not FDA approved on the allegedly authentic product, but the advice is not listed as a difference, and Plaintiff will necessarily agree that there is no FDA approval for its products.

There is simply no way for AKF to state that its products are "safer" than any product bearing an identical Cake label, or any Delta-8 vape product for that matter. Granting the injunction improperly gives the imprimatur of legitimacy (and safety) to Delta-8 vape products.

## IV.   CONCLUSION

For all the foregoing reasons, the court's Order granting the injunction should be vacated, and the preliminary injunction itself should be recalled or vacated.

Respectfully submitted,

**SAGE LAW PARTNERS, P.C.**

Dated:   August 26, 2021             By:___/s/Darrel C. Menthe_____
                                     Darrel C. Menthe
                                     *Attorneys for Defendant Boyd Street Distro LLC*