**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AK FUTURES LLC, _Plaintiff-Appellee,_ <br><br> v. <br><br> BOYD STREET DISTRO, LLC, a California limited liability company, _Defendant-Appellant._ | No. 21-56133 <br><br> D.C. No. 8:21-cv-01027-JVS-ADS <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted March 18, 2022
Las Vegas, Nevada

Filed May 19, 2022

Before: Andrew J. Kleinfeld, D. Michael Fisher,* and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Fisher

---

\* The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

2          AK FUTURES V. BOYD STREET DISTRO

### SUMMARY<sup>**</sup>

**Trademark Infringement / Preliminary Injunction**

The panel affirmed the district court's grant of a preliminary injunction in favor of AK Futures LLC, a manufacturer of e-cigarette and vaping products, in a copyright and trademark infringement action in which AK Futures alleges that Boyd Street Distro, LLC, has been selling counterfeit versions of AK Futures' "Cake"-branded e-cigarette and vaping products containing delta-8 tetrahydrocannabinol ("delta-8 THC").

The panel wrote that the district court's order, which limited the scope of copyright protection to AK Futures' one registered copyright and granted trademark protection to its six unregistered marks, properly distinguished between trademark and copyright protection.

Boyd Street did not contest the district court's finding that it was selling counterfeit versions of AK Futures' Cake products. Its chief argument was that AK Futures could not own a valid trademark in connection with these products because federal law forbids possession and sale of delta-8 THC. Granting the preliminary injunction, the district court held that the 2018 Agricultural Improvement Act (the "Farm Act") legalized the company's delta-8 THC products.

The panel held that the plain and unambiguous text of the Farm Act compels the conclusion that AK Futures' delta-8 THC products are lawful. Observing that the relevant

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

portion of the Farm Act removes "hemp" from the definition of marijuana in the Controlled Substances Act, the panel concluded that on the available record, the delta-8 THC in AK Futures' e-cigarette liquid appears to fit comfortably within the statutory definition of "hemp"—*i.e.*, the liquid is properly understood as a derivative, extract, or cannabinoid originating from the cannabis plant and containing "not more than 0.3 percent" delta-9 THC.  The panel wrote that because the Farm Act's definition of hemp is not ambiguous, the panel does not consider agency interpretation, and even if it did, the Drug Enforcement Agency's view of the Farm Act's plain text aligns with the panel's own.  The panel wrote that any congressional intent that the Farm Act legalize only industrial hemp, not a potentially psychoactive substance like delta-8 THC, appears neither in hemp's definition nor in its exemption from the Controlled Substances Act.  The panel therefore concluded that AK Futures is likely to succeed on the merits of its trademark claim.

The panel held that Boyd Street failed to overcome the district court's finding and presumption of irreparable harm absent an injunction. The panel wrote that none of Boyd Streets' arguments why the injunction is not in the public interest succeed in convincing it that the district court erred.

The panel remanded for further proceedings.

4          AK FUTURES V. BOYD STREET DISTRO

## COUNSEL

Darrel C. Menthe (argued), Sage Law Partners PC, Culver City, California, for Defendant-Appellant.

James R. Sigel (argued) and Joyce Liou, Morrison & Foerster LLP, San Francisco, California; Benjamin J. Fox and Ani Oganesian, Morrison & Foerster LLP, Los Angeles, California; Thomas Frost, The Frost Firm, San Diego, California; for Plaintiff-Appellee.

## OPINION

D.M. FISHER, Circuit Judge:

AK Futures LLC, a manufacturer of popular e-cigarette and vaping products, brought suit for trademark and copyright infringement against Boyd Street Distro, LLC, a downtown Los Angeles storefront and smoke products wholesaler. According to AK Futures, Boyd Street has been selling counterfeit versions of its "Cake"-branded e-cigarette and vaping products containing delta-8 tetrahydrocannabinol ("delta-8 THC"), a chemical compound derived from hemp. Boyd Street contends that AK Futures does not have protectible trademarks for its Cake products because delta-8 THC remains illegal under federal law. Faced with AK Futures' request for a preliminary injunction, the District Court held that the 2018 Agriculture Improvement Act (the "Farm Act") legalized the company's delta-8 THC products, and it granted injunctive relief. Plain statutory text compels the conclusion that AK Futures' products are lawful, and we see no other reason to deny a preliminary injunction. We affirm.

## I.  Background

### A.  Factual History

AK Futures is a producer and distributor of e-cigarette and vaping products, including electronic delivery systems and cartridges containing e-cigarette liquid. This suit involves the company's Cake-branded delta-8 THC products. Delta-8 THC is a chemical compound that occurs naturally in the cannabis plant, *Cannabis sativa L.*, which can be grown into either hemp or marijuana (alternatively spelled marihuana) depending on cultivation method. *5 Things to Know about Delta-8 Tetrahydrocannabinol – Delta-8 THC*, U.S. Food & Drug Admin. (Sept. 14, 2021). According to the Food and Drug Administration, delta-8 THC has "psychoactive and intoxicating effects" similar to delta-9 tetrahydrocannabinol ("delta-9 THC"), a different chemical compound and the main psychoactive component of marijuana. *Id.* The FDA notes that delta-8 THC "is not found in significant amounts in the cannabis plant. As a result, concentrated amounts of delta-8 THC are typically manufactured from hemp-derived cannabidiol." *Id.*

In 2018, Congress passed and the President signed the Farm Act, Pub. L. No. 115-334, 132 Stat. 4490, which legalized the possession and cultivation of hemp. *See* 21 U.S.C. §§ 802(16)(B), 812 sched. I(c)(17). Because hemp and marijuana are different varieties of the same plant, the Farm Act uses the concentration of delta-9 THC to set a threshold distinguishing the two. As defined by the Act, hemp includes "any part of" the plant *Cannabis sativa L.* "and all derivatives, extracts, [and] cannabinoids . . . , whether growing or not," with a delta-9 THC concentration of no more than 0.3 percent on a dry weight basis. 7 U.S.C. § 1639*o*(1). The Act is silent with regard to delta-8 THC.

AK Futures manufactures flavored e-cigarette liquid containing delta-8 THC, which it describes as "a hemp-derived product with less than 0.3% of the psychoactive delta-9-[THC] compound." According to the company, its products come with a QR code permitting verification of "the percent of THC in the e-liquid (less than 0.3%)." The company also states that it "regularly tests its products for potency and regulatory compliance purposes, and screens for heavy metals, pesticides, and other contaminates." The record reveals little else about the manufacturing process.

In October 2020, AK Futures devised the Cake brand—a logo depicting a two-tier cake overlaid with a stylized letter "C"—to market its delta-8 THC products. The company registered this Cake logo with the U.S. Copyright Office. It also has pending trademark applications for six marks, four of which are various permutations of the word Cake and two are versions of the logo. All trademark applications are for use in connection with e-cigarette liquid, cartridges, and delivery systems. The Cake name and logo appear on the packaging of the devices. AK Futures avers that its Cake products are extremely popular, having generated $60 million in revenue over a nine-month period.

AK Futures learned of counterfeit versions of its Cake e-cigarette products being sold by Boyd Street, a smoke products wholesaler and storefront in downtown Los Angeles, over the summer of 2021. Boyd Street is not one of AK Futures' authorized retailers. Suspecting infringement, AK Futures hired a private investigator to visit Boyd Street and purchase the purported Cake products. AK Futures' packaging manufacturer compared the Cake products obtained from Boyd Street to the originals, and, despite a strong resemblance between the two, it observed differences in packaging materials, labeling, and color. It concluded the

Cake products sold by Boyd Street were inauthentic. As part of this case, AK Futures has submitted images showing its own Cake e-cigarette products and packaging next to virtually identical counterfeits.

Boyd Street claims it had only two interactions with Cake-branded products. The first involved an unidentified "someone" approaching the store and selling Cake products on consignment. Boyd Street does not have "checks or receipts for these sales." According to its CEO, the store conducts most of its business in cash. The second entailed Boyd Street making a purchase from a person who "told [the CEO] they were an authorized distributor" of Cake products. The CEO states that his usual method of verifying a seller's authenticity is to ask for an invoice. Boyd Street claims its entire inventory of Cake products has been sold and that it has "no plans" to sell Cake products in the future.

B.  Procedural History

AK Futures brought suit in the U.S. District Court for the Central District of California alleging copyright infringement under 17 U.S.C. § 101 *et seq.*, and federal unfair competition and false designation under the Lanham Act, 15 U.S.C. § 1125(a). It also brought two California law claims that are irrelevant to this appeal. The company moved for a preliminary injunction.

Boyd Street initially failed to file a motion in opposition, so the District Court entered a preliminary injunction without hearing from the store. The Court enjoined Boyd Street from selling goods bearing imitations of AK Futures' two Cake logo trademarks or "any copy or colorable imitation of" the company's "CAKE trademarks." In a separate section of the order, it enjoined Boyd Street from "reproducing, distributing . . . , or displaying" copies of the

copyrighted Cake design. After allowing Boyd Street leave to file and considering both parties' submissions, the District Court issued an amended order and opinion keeping the injunction in place.

Reciting the facts, the District Court's opinion stated that AK Futures had applied for trademark registration and "had continuously used one or more of the aforementioned [m]arks in commerce" since October 2020. Later, the Court concluded that AK Futures owned a valid copyright because the company "owns six [m]arks for its Cake product, all of which are registered." In its trademark discussion, the Court determined that AK Futures, by showing a likelihood of success on its copyright claim, had impliedly met the standard for ownership of a valid trademark. It concluded that AK Futures was likely to succeed in showing both copyright and trademark infringement, noting that the Cake products sold by Boyd Street were "almost identical" to the originals. The Court ultimately agreed with AK Futures that—on the available record—its products are lawful under the Farm Act.

Boyd Street timely appealed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 15 U.S.C. § 1121 (federal trademark) and 28 U.S.C. §§ 1331, 1338(a) (federal question and federal intellectual property). We have jurisdiction under 28 U.S.C. § 1292(a)(1) (appeal from injunction). We review the District Court's decision to grant a preliminary injunction for an abuse of discretion; we review underlying legal conclusions *de novo* and factual findings for clear error. *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (per curiam). A "district court abuses its discretion if its conclusions are without support in inferences

that may be drawn from the facts in the record." *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 957 (9th Cir. 2021) (quotation omitted).

## III.  Discussion

Appealing the preliminary injunction, Boyd Street does not contest the District Court's finding that it was selling counterfeit versions of AK Futures' Cake products. Instead, its chief argument is that AK Futures could not own a valid trademark in connection with these products because federal law forbids the possession and sale of delta-8 THC. AK Futures responds that the Farm Act legalized delta-8 THC and, by extension, its products incorporating the compound. We agree with AK Futures, and we hold the District Court properly issued a preliminary injunction.

To obtain a preliminary injunction, a party must show: (1) it will likely succeed on the merits, (2) it will likely suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in its favor, and (4) the public interest favors an injunction. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). In addition to claiming delta-8 THC remains illegal, Boyd Street attacks the District Court's determinations on irreparable harm and the public interest. It does not challenge the finding that the equities favor AK Futures. We therefore consider in turn each injunction element besides the equities, after first clearing up some confusion about the differences between copyright and trademark.

## A.  Copyright-Trademark Distinction

At the outset, Boyd Street concedes that AK Futures has shown a likelihood of success on its copyright infringement claim with regard to its one registered copyright. But Boyd

10          AK FUTURES V. BOYD STREET DISTRO

Street argues the District Court erroneously extended copyright protection to AK Futures' six unregistered trademarks. Indeed, the District Court's statement in its copyright discussion that AK Futures "owns six [m]arks for its Cake product, all of which are registered," was incorrect. AK Futures owns just one registered copyright, which covers a single version of the Cake logo design. It has applied for trademark registration for six marks, but these applications remain pending.

Copyright and trademark registration are not interchangeable. The two involve different government offices. *Compare* 17 U.S.C. § 701(a) (U.S. Copyright Office), *with* 15 U.S.C. § 1051(a)(1) (Patent and Trademark Office). They grant different protections and rights. *Compare* 17 U.S.C. § 106 (copyright), *with* 15 U.S.C. §§ 1057(b), 1115 (trademark). And, most pertinently here, registration is a vital "prerequisite" for a copyright infringement action, *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 944 (2022), but a party with only unregistered marks may still bring a trademark infringement action under 15 U.S.C. § 1125(a). *Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017). Thus, conflating AK Futures' registration of one valid copyright with its mere application to register six trademarks would ordinarily be error.

However, the District Court's order entering the injunction properly distinguished between trademark and copyright protection. Contrary to Boyd Street's claim that the District Court granted copyright protection to AK Futures' unregistered marks, the order limited the scope of copyright protection to the one registered copyright. The order instead granted trademark protection to the unregistered marks, which followed from the District

Court's separate discussion of AK Futures' likelihood of success on its trademark claim. We therefore must evaluate whether the District Court properly issued a preliminary injunction protecting AK Futures' trademarks.

B.   Likelihood of Success on the Merits: Trademark

AK Futures is likely to succeed on its trademark claim because its delta-8 THC products are not prohibited by federal law, and they may therefore support a valid trademark. AK Futures sought a preliminary injunction to prevent the infringement of its six unregistered trademarks under 15 U.S.C. § 1125(a). This provision forbids, "in connection with any goods . . . or any container for goods," the "use[] in commerce [of] any word, term, name, symbol, or device" that is likely to cause confusion as to the origin of the relevant goods. 15 U.S.C. § 1125(a). An infringement action for unregistered marks requires a plaintiff to show, among other elements not contested on this appeal, ownership of "a valid, protectable trademark." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). To own an unregistered mark, the plaintiff must be the first to use the mark in commerce, and such use must be lawful. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926, 930–32 (9th Cir. 2014).

Turning briefly to priority of use in commerce, nobody disputes that AK Futures was the first to use the Cake brand. Perplexingly, the District Court, in its discussion of this element, repeated its mistake conflating AK Futures' unregistered trademarks with its registered copyright. This was error, but such error is immaterial to our decision on appeal. AK Futures' uncontradicted declaration shows it developed and first used the Cake brand in commerce in October 2020, a statement the District Court appears to have credited in its recitation of the facts. Boyd Street has not

12          AK Futures v. Boyd Street Distro

claimed to be the prior user of the Cake brand at any point in this litigation, nor has it asserted that any third party owns the mark. As a result, the record uniformly supports affirmance despite the District Court's error because there is no dispute between the parties as to AK Futures' prior use. *See Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 608 (9th Cir. 2000) (permitting affirmance of preliminary injunction on any ground supported by the record, but declining to do so). Having addressed first use, we arrive at the key disagreement: whether AK Futures' use was lawful.

"[O]nly *lawful* use in commerce can give rise to trademark priority." *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007). This rule prevents the absurd result of the government "extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws." *Id.* And it favors sellers who take the time to comply with government regulation before bringing products to market. *Id.* At the same time, we have explained that illegal activity of insufficient gravity or connection to a mark's use in commerce might not defeat an otherwise valid trademark. *See S. Cal. Darts Ass'n*, 762 F.3d at 931. The parties do not advance arguments based on these exceptions, so we do not consider them now.

Instead, the parties dispute whether the possession and sale of delta-8 THC is permitted under federal law and, consequently, whether a brand used in connection with delta-8 THC products may receive trademark protection. AK Futures argues that delta-8 THC falls under the definition of hemp, which was legalized by the 2018 Farm Act. Boyd Street argues a contrary interpretation of the Act based on agency documents and congressional intent. To evaluate

these divergent claims, we look first to the text of the Farm Act before assessing Boyd Street's contentions.

1.  The Farm Act: Plain Text

When engaging in statutory interpretation, "we start where we always do: with the text." *Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021). As we explain further, the plain and unambiguous text of the Farm Act compels the conclusion that the delta-8 THC products before us are lawful.

The relevant portion of the Farm Act removes "hemp" from the definition of marijuana in the Controlled Substances Act, Pub. L. No. 91-513, 84 Stat. 1242 (1970). Specifically, "the term 'marihuana' means all parts of the plant Cannabis sativa L. . . . [, but] does not include . . . hemp." 21 U.S.C. § 802(16). So, though marijuana remains a schedule-I controlled substance, *see* § 812 sched. I(c)(10), hemp has now been removed from schedule I. Likewise, although schedule I continues to list "tetrahydrocannabinols," it now exempts "tetrahydrocannabinols in hemp." § 812 sched. I(c)(17). Both of these sections reference the same statutory definition of hemp. *See* §§ 802(16)(B)(i), 812 sched. I(c)(17). We therefore turn to this definition.

The Farm's Act definition of hemp represents the crux of the parties' disagreement, and we quote it in full.

> The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a

14          AK FUTURES V. BOYD STREET DISTRO

> delta-9 [THC] concentration of not more than
> 0.3 percent on a dry weight basis.

7 U.S.C. § 1639o(1). Before interpreting this statutory
language, we observe that the Drug Enforcement
Administration has incorporated this definition into its
regulations. The entry for tetrahydrocannabinols on the
DEA's regulatory schedule I exempts "any material,
compound, mixture, or preparation that falls within the
definition of hemp set forth in 7 U.S.C. [§] 1639o." 21
C.F.R. § 1308.11(d)(31)(ii). And the DEA's entry for
"Marihuana Extract" mirrors the terms of the Farm Act's
definition. *See* § 1308.11(d)(58) (defining "Marihuana
Extract" to include only cannabinoid extracts with greater
than 0.3 percent delta-9 THC).

AK Futures argues the Farm Act's definition of hemp
encompasses its delta-8 THC products so long as they
contain no more than 0.3 percent delta-9 THC. Plain
meaning supports this interpretation. A straightforward
reading of § 1639o yields a definition of hemp applicable to
all products that are sourced from the cannabis plant, contain
no more than 0.3 percent delta-9 THC, and can be called a
derivative, extract, cannabinoid, or one of the other
enumerated terms.

Importantly, the only statutory metric for distinguishing
controlled marijuana from legal hemp is the delta-9 THC
concentration level. In addition, the definition extends
beyond just the plant to "all derivatives, extracts, [and]
cannabinoids." 7 U.S.C. § 1639o(1). The use of "all"
indicates a sweeping statutory reach. *See Lambright v. Ryan*,
698 F.3d 808, 817 (9th Cir. 2012) ("The common meaning
of the word 'all' is 'the whole amount, quantity, or extent of;
as much as possible' . . . ." (quoting *All*, Merriam-Webster

(online ed., visited Oct. 4, 2012))). This seemingly extends to downstream products and substances, so long as their delta-9 THC concentration does not exceed the statutory threshold.

Certainly, a substance must be a derivative, extract, cannabinoid, or one of the other enumerated terms to fall within the Farm Act's statutory definition. However, these terms do not impose meaningful constraints. We may consider whether a term carries a technical meaning in a particular context. For instance, in *Van Buren*, a case concerning the Computer Fraud and Abuse Act, the Supreme Court considered the technical meaning of the term "access" in the "computing context." 141 S. Ct. at 1657. Here, the various terms of § 1639*o* all have technical meanings in the chemistry context, but these meanings are themselves broad. *See, e.g.*, *Derivative*, Merriam-Webster (online ed., last visited Feb. 15, 2022) ("[A] chemical substance related structurally to another substance and theoretically derivable from it[.]"); *Extract*, Oxford English Dictionary (online ed., March 2022) ("The substance extracted[.]"); *Cannabinoid*, Oxford English Dictionary (online ed., Dec. 2021) ("Any of a group of substances including cannabinol, cannabidiol, and other structurally related compounds of natural and synthetic origin."). Thus, even in the chemistry context, the terms in the Farm Act's definition of hemp capture a wide variety of potential substances and products.

On the available record, the delta-8 THC in AK Futures' e-cigarette liquid appears to fit comfortably within the statutory definition of "hemp." According to the company's uncontradicted declaration, its delta-8 THC products are "hemp-derived" and contain "less than 0.3" percent delta-9 THC. The FDA materials cited by Boyd Street also refer to delta-8 THC as "one of over 100 *cannabinoids* produced

naturally by the cannabis plant." *5 Things to Know about Delta-8*, *supra* (emphasis added). This indicates that the delta-8 THC in the e-cigarette liquid is properly understood as a derivative, extract, or cannabinoid originating from the cannabis plant and containing "not more than 0.3 percent" delta-9 THC. *See* 7 U.S.C. § 1639*o*(1). AK Futures is thus likely to succeed in showing its products are not illegal under federal law and are eligible for trademark protection.

The conclusion that AK Futures' delta-8 THC products are lawful necessarily depends on the veracity of the company's claim that these products contain no more than 0.3 percent delta-9 THC. A showing that AK Futures' products contain more than the permitted threshold level of delta-9 THC would defeat AK Futures' entitlement to trademark protection. According to the DEA and FDA, "many cannabis-derived products do not contain the levels of cannabinoids that they claim to contain on their labels." *Implementation of the Agriculture Improvement Act of 2018*, 85 Fed. Reg. 51,639, 51,641 (Aug. 21, 2020). So it is entirely possible that AK Futures may ultimately fail to show that its products stay within acceptable delta-9 THC limitations.

But at the preliminary injunction stage we must assess likely success, and the only probative record evidence is AK Futures' statement that its products contain less than 0.3 percent delta-9 THC. Further evidentiary support is not required at this stage. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088–89 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction, [unless they] consist largely of general assertions which are substantially controverted by counter-affidavits . . . ."). Along with its complaint and motion for an injunction, AK Futures has provided a sworn declaration that remains uncontradicted regarding the factual

particulars of its delta-8 THC products. This is sufficient to obtain an injunction.

## 2. Boyd Street's Counterarguments

Boyd Street advances two principal arguments that the legalization of hemp in the Farm Act does not extend to delta-8 THC, neither of which overcomes the clear statutory text. First, Boyd Street argues the DEA has interpreted the Act not to apply to delta-8 THC because of the compound's method of manufacture or concoction. Second, it argues that Congress never intended for the Act to legalize any psychoactive substances, such as delta-8 THC. Both arguments fail.

### a. Agency Interpretation

Boyd Street argues that, according to the DEA, delta-8 THC remains a schedule I substance because of its method of manufacture. Boyd Street relies on the DEA's explanation of its implementing regulations. It points to the phrase, "[a]ll synthetically derived tetrahydrocannabinols remain schedule I controlled substances." 85 Fed. Reg. at 51,641. According to Boyd Street, delta-8 THC is "synthetically derived" because it must be extracted from the cannabis plant and refined through a manufacturing process. In Boyd Street's view, "[d]elta-8 [THC] is considered a synthetic cannabinoid by the DEA because, among other things, it is concentrated and flavored."

Although we disagree with Boyd Street on the DEA's stance, we need not consider the agency's interpretation because § 1639*o* is unambiguous and precludes a distinction based on manufacturing method. Clear statutory text overrides a contrary agency interpretation. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837,

842–43 (1984). The Farm Act's definition of hemp does not limit its application according to the manner by which "derivatives, extracts, [and] cannabinoids" are produced. Rather, it expressly applies to "all" such downstream products so long as they do not cross the 0.3 percent delta-9 THC threshold. 7 U.S.C. § 1639*o*(1). While this statutory definition is broad, its breadth does not make it ambiguous. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 557 (9th Cir. 2016) ("[A] word or phrase is not ambiguous just because it has a broad general meaning . . . ."). Consequently, determining the scope of the Farm Act's legalization of hemp is not a situation where agency deference is appropriate.

Even if the relevant portions of the Farm Act were ambiguous, the DEA does not appear to agree with Boyd Street as to what makes a cannabis product synthetic and thus unlawful. In the same passage quoted by Boyd Street, the DEA explains the Farm Act does not affect "the control status of synthetically derived tetrahydrocannabinols" because hemp, as defined by the statute, "is limited to materials that are derived from the plant Cannabis sativa L." 85 Fed. Reg. at 51,641. This language suggests the source of the product—not the method of manufacture—is the dispositive factor for ascertaining whether a product is synthetic. A recent agency letter bolsters this understanding. There, the DEA clarifies that "synthetic" delta-8 THC is produced "from non-cannabis materials" and thus remains banned. Letter from Terrence L. Boos, Drug & Chem. Evaluation Section Chief, Drug Enf't Admin., U.S. Dep't of Justice, to Donna C. Yeatman, Exec. Sec'y, Ala. Bd. of Pharmacy (Sept. 15, 2021). In short, the DEA appears to understand the Farm Act's definition of hemp in the same manner as this Court.

Boyd Street further points to a copy of the controlled substances schedule from the DEA's website that lists delta-8 THC among tetrahydrocannabinols controlled under schedule I. To the extent that this copy of the schedule suggests that hemp-derived delta-8 THC remains controlled regardless of its delta-9 THC concentration level, this is inconsistent with both statutory text and the DEA's own duly enacted regulations. *See* 7 U.S.C. § 1639*o*(1); 21 C.F.R. § 1308.11(d)(31)(ii), (d)(58). As a result, we would afford no deference to such an interpretation. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (observing that no deference is afforded where an agency's interpretation is inconsistent with its own regulation); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159–60 (2012) (finding agency interpretation unpersuasive where inconsistent with statute). This copy of the schedule does not help Boyd Street.

In sum, the Farm Act's definition of hemp is not ambiguous, so we do not consider agency interpretation. Even if we did, the DEA's view of the Farm Act's plain text aligns with our own and does not support Boyd Street's proposed distinction based on manufacturing method.

### b. Congressional Intent

Boyd Street next argues Congress intended the Farm Act to legalize only industrial hemp, not a potentially psychoactive substance like delta-8 THC. As evidence, it quotes from statements in the legislative history referring to industrial hemp. *See, e.g.*, 164 Cong. Rec. H10,145 (daily ed. Dec. 12, 2018) (statement of Rep. Comer) ("I am particularly glad to see industrial hemp de-scheduled from the controlled substances list . . . ."). Boyd Street is effectively asking us to recognize the following limitation: that substances legalized by the Farm Act must be somehow suited for an industrial purpose, not for human consumption.

20          AK FUTURES V. BOYD STREET DISTRO

Unfortunately for Boyd Street, this limitation appears neither in hemp's definition, nor in its exemption from the Controlled Substances Act. *See* Farm Act, §§ 10113–14, 12619, 132 Stat. at 4908–14, 5018. The term "industrial hemp" does appear in a separate section modifying previously enacted authorization for research into the plant. § 7605, 132 Stat. at 4828–29. But the relevant U.S. Code provision contains its own definition of "industrial hemp" that is even broader than the one we have considered so far. *See* 7 U.S.C. § 5940(a)(2). To give effect to Boyd Street's understanding of congressional purpose, we would need to read its proposed limitation into the statute. But courts will allow neither ambiguous legislative history, nor speculation about congressional intent to "muddy" clear statutory language. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019); *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2073 (2018).

Regardless of the wisdom of legalizing delta-8 THC products, this Court will not substitute its own policy judgment for that of Congress. If Boyd Street is correct, and Congress inadvertently created a loophole legalizing vaping products containing delta-8 THC, then it is for Congress to fix its mistake. Boyd Street's intent-based argument is thus unsuccessful. With that, neither of Boyd Street's counterarguments dissuade us from the conclusion that AK Futures is likely to succeed on the merits of its trademark claim. We are left with Boyd Street's remaining challenges to the injunction's other elements.

####    c.   Irreparable Harm

The District Court correctly found that AK Futures is likely to suffer irreparable harm absent an injunction. By statute, AK Futures is entitled to a rebuttable presumption of irreparable harm on its trademark claim because the

company has shown it will likely succeed on the merits. *See* 15 U.S.C. § 1116(a). AK Futures has also argued that its declarations show it will suffer damage to its reputation and a loss of consumer goodwill from the sale of counterfeit Cake products.

Boyd Street's arguments fail to rebut the presumption in AK Futures' favor or to show the injunction should not have issued on the copyright claim. Boyd Street relies on its CEO's declaration, which states the store has stopped selling Cake-branded products and has no plans to do so in the future. Following Boyd Street's logic, AK Futures cannot suffer harm if the sale of counterfeit Cake products has ceased. Alas for Boyd Street, it waived this argument. Before the District Court, it argued the lack of intent to make future sales as an aspect of success on the merits, not irreparable harm. Consequently, the District Court never had an opportunity to consider whether the intent to stop selling Cake products could defeat a presumption and showing of irreparable harm. We will not do so for the first time on appeal. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1095 (9th Cir. 2021) ("[W]e refrain from deciding an issue that the district court has not had the opportunity to evaluate." (quotation omitted)).

Even if the argument were not waived, we strongly doubt Boyd Street's stated intent to stop selling Cake products would defeat AK Futures' presumption and showing of irreparable harm. Boyd Street's declaration contains a number of admissions that call into question its ability to adequately control the flow of products through its store. Most of its business is in cash, it does not keep documentation associated with at least some portion of its sales, and its CEO relies on the mere fact that a seller issues an invoice to assess authenticity. This all suggests a business

structure without safeguards against selling counterfeit products. Thus, in pointing to its CEO's declaration to no longer sell Cake products, Boyd Street fails to overcome the District Court's finding and presumption of irreparable harm in AK Futures' favor.

### d.   Public Interest

Boyd Street presents several arguments why the injunction is not in the public interest, but none succeed in convincing us the District Court committed error. Boyd Street begins with a challenge to the trademark claim. It argues that various public interests typically present in trademark cases—for instance, protecting consumers from the confusion caused by counterfeit goods—do not apply where the underlying product is unlawful. This argument necessarily rises or falls with our view of the lawfulness of delta-8 THC. Because we have determined AK Futures will likely succeed in showing its delta-8 THC products are lawful, this first argument gets Boyd Street nowhere.

Next, Boyd Street attacks the District Court's reasoning that an injunction will serve the public heath by allowing consumers to avoid potentially unsafe counterfeit products. According to Boyd Street, there is no evidence that the original products are safe because they are not tested or otherwise regulated by the FDA. However, Boyd Street fails to grapple with the quality-control measures that AK Futures reportedly imposes on its own. AK Futures' undisputed declaration reveals that it "screens for heavy metals, pesticides, and other contaminates" in its products, though it cannot test counterfeits. Keeping heavy metals and pesticides out of consumer smoking products unquestionably serves the public health.

More broadly, Boyd Street suggests that delta-8 THC is potentially unsafe for consumers, so an injunction protecting marks used in connection with these products may never be in the public interest. But Boyd Street misunderstands the nature of trademark law. Agreeing with Boyd Street at this stage would not keep delta-8 THC products off of the market, rather it would let a store continue to sell counterfeit versions of unknown origin.

AK Futures has staked its name and reputation on the safety and quality of its Cake-branded products. *See Manhattan Med. Co. v. Wood*, 108 U.S. 218, 222 (1883) ("[A] trade-mark is . . . a sign of the quality of the article . . . ."); *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 603 (1967) (Harlan, J., concurring) ("[A] brand name may also be an assurance of quality. . . ."). The protections of trademark law mean that AK Futures does not need to do the same for the untested products of other companies. *See* 1 J. Thomas McCarthy on Trademarks and Unfair Competition § 3:11 (5th ed. 2017) ("When there is trademark infringement, the reputation for quality enjoyed by the senior user is now in the hands of a stranger: the infringer."). And these protections allow consumers to distinguish between brands that take consumer health seriously—as AK Futures declares it does—and those that do not. *See* 1 McCarthy, *supra*, § 2:24; 4 *id.* § 25:10. The public health interest favors an injunction.

Finally, Boyd Street alludes to an argument that an injunction will not help trace the origins of the counterfeit Cake products. But as already explained, the public interest benefits from curtailing the sale of counterfeit products, which this injunction does.

## IV.  Conclusion

The record on appeal convinces us that AK Futures' delta-8 THC products are lawful under the plain text of the Farm Act and may receive trademark protection. As we have noted, this conclusion is necessarily tentative given the nature of preliminary relief. Yet Boyd Street fails to persuade us the District Court should not have issued an injunction. Therefore, we **AFFIRM** the grant of a preliminary injunction in AK Futures' favor, and we remand for further proceedings.